**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**          Index No.  18-6448
-----------------------------------------------------------x

**VINCENT C. GROSSO and PATRICIA M. WING,**
**On Behalf Of Themselves and All Others**
**Similarly Situated,**

                              **Plaintiffs,**

              **- against -**

**AT&T PENSION BENEFIT PLAN**
**and AT&T SERVICES, INC, AS PLAN**
**ADMINISTRATOR,**

                              **Defendants.**
-----------------------------------------------------------x

_____

**CLASS ACTION COMPLAINT**
_____

                    Edgar Pauk
                    1066 Union Street
                    Brooklyn, New York 11225
                    (718) 399-2023
                    E-mail: lawoffice@edgarpauk.com

                    Robert L. Liebross
                    39 Broadway, Suite 1620
                    New York, NY 10006
                    (212) 566-2151
                    E-mail: rliebross@liebrosslaw.com

                    Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x        Index No.  18-6448

VINCENT C. GROSSO and PATRICIA M. WING,
On Behalf Of Themselves and All Others
Similarly Situated,

                                        Plaintiffs,

                    - against -

AT&T PENSION BENEFIT PLAN
and AT&T SERVICES, INC, AS PLAN
ADMINISTRATOR,

                                        Defendants.
---------------------------------------------------------x

_____

## CLASS ACTION COMPLAINT
_____

## I.  PRELIMINARY STATEMENT

1.  Plaintiffs Vincent C. Grosso and Patricia M. Wing bring this action

pursuant to the Employee Retirement Income Security Act of 1974, 29 USC

§ 1001 *et seq* ("ERISA"), on their own behalf and on behalf of all others similarly

situated, to recover from Defendants, AT&T Pension Benefit Plan and AT&T

Services, Inc., as Plan Administrator, the full pension benefits they accrued during

their employment with AT&T Inc. ("AT&T"), the Plan sponsor.

2.  In April 1997, AT&T adopted an amendment to the AT&T Pension Benefit Plan (the "Plan," the "AT&T Plan") which, effective August 1, 1997, entitled eligible current and former management employees to receive unreduced early retirement benefits at age 55, instead of having to wait to age 65 to receive the same monthly benefit.   The Amendment is referred to as the "Special Update."

3.  The only two requirements for eligibility for the Special Update were that individuals must have been AT&T employees and participants in the Plan on January 1, 1997.  It is uncontested that Plaintiffs met both requirements.

4.  Plaintiffs did not learn of the adoption of the Special Update until, in the case of Mr. Grosso, January 2017, when he was 63 years old and, in the case of Ms. Wing, December 2016, when she was 59 years old.  Upon learning of its adoption, Plaintiffs applied immediately for the unreduced early retirement benefits to which they had become entitled at age 55.

5.  AT&T, however, awarded them benefits only prospectively from the dates of their respective applications, causing them to forfeit all retroactive benefits payable between the date of application and age 55.

6.  As calculated by AT&T, Mr. Grosso's retroactive claim is valued at $ 229,108.29, plus interest, while Ms. Wing's is valued at $ 87,381.84, plus interest.

7.  AT&T predicated the denial of retroactive benefits not on the Special Update, as adopted in 1997, but on an amendment to the Special Update which it adopted in December 2016, nineteen years after Plaintiffs left AT&T's employment and just days before they applied for benefits (the "2016 Amendment").  As applied, but not explained by AT&T, the 2016 Amendment requires a written application as a condition of *entitlement* to unreduced early retirement benefits and, therefore, does not permit retroactive payments.

8.  AT&T's denial of retroactive benefits to Plaintiffs violates the Special Update which, as in effect when Plaintiffs left AT&T's employment, did not require a written application as a condition of *entitlement* to unreduced early retirement benefits, and did not prohibit retroactive payments.  Moreover, AT&T's application of the 2016 Amendment to Plaintiffs' claims reduced their accrued benefits retroactively, in violation of ERISA's anti-cutback rule.

## II.  JURISDICTION

9.  The Court has jurisdiction over the subject matter of this action pursuant to ERISA Sections 502(e)(1), 29 USC §§ 1132(e)(1), and 28 USC § 1331, because this action arises under the laws of the United States, namely ERISA.

4

### III.  VENUE

10.  The United States District Court for the Southern District of New York is a proper venue for this action pursuant to ERISA Section 502(e)(2), 29 USC § 1132(e)(2), because in Mr. Grosso's case the breach took place in this District, and Defendants can be found in this District.

### IV.  PARTIES

**Plaintiff**s

11.  Plaintiffs Vincent C. Grosso and Patricia M. Wing are both participants, within the meaning of ERISA Section 3(7), 29 USC § 1002(7), in the Plan.  Both currently receive unreduced early retirement benefits from the Plan, but only from the date of their respective applications.  Mr. Grosso resides in New York County in this District, while Ms. Wing resides in New Jersey.

**Defendants**

12.  Defendant AT&T Plan is an "employee benefit plan," as defined at ERISA Section 3(3), 29 USC § 1002(3), and more precisely, a "defined benefit pension plan," as defined in ERISA Section 3(35), 29 USC § 1002(35).  The Plan was established on October 1, 1980 to provide eligible employees with retirement,

disability, death and certain other ancillary benefits.  The Plan's offices are located in Dallas, Texas.

13.  Defendant AT&T Services, Inc. is the Plan Administrator and the Named Fiduciary of the Plan within the meaning of ERISA Section 3(16)(A)(i), 29 USC § 1002(16)(A)(i), because it is so designated by the terms of the Plan.  Its offices are also located in Dallas, Texas.

## V.  STATEMENT OF FACTS

14.  Mr. Grosso, who was born in April 1954, began his employment with AT&T at age 24 on January 1, 1979, as a management employee eligible to participate in the AT&T Plan.  He remained employed by AT&T until July 3, 1997, when he was 43 years old.

15.  Ms. Wing, who was born in April 1957, began her employment with AT&T in August 1979 at age 22, and remained employed by AT&T until she resigned on June 13, 1997 at age 40.

16.  In 1996-97, AT&T decided to reduce its pension costs by changing the method by which it calculated pension benefits from a traditional, defined benefit approach, which depended on compensation and years of service, to a cash balance formula.  The latter formula, which would become effective on January 1,

1998, created a hypothetical individual account for each employee to which

AT&T would contribute a certain amount of "pay" and "interest" for each year of

service.

17.  In April 1997, AT&T "froze" accruals under the traditional pension

plan as of July 31, 1997, but offered eligible participants what it termed a "Special

Update," which enhanced the old benefit formula, and eliminated age and service

requirements for taking early retirement.  Eligible Plan participants were those

who were both AT&T employees and participants in the AT&T Plan on January 1,

1997.

18.  The Special Update also provided that eligible Plan participants who

left AT&T's employment after January 1, 1997, would be entitled to unreduced

early retirement benefits at age 55.  Payments under the Special Update were to

begin as early as August 1, 1997, the day after the effective date of the "freeze" of

accruals under the old benefit formula.

19.  Prior to 1997, the AT&T Plan did not provide for any benefits before

age 65 for participants who, like Plaintiffs, had less than 20 years of service and

left AT&T employment before age 55.

20.  When Mr. Grosso and Ms. Wing terminated employment with AT&T

they weren't close to age 55, did not have 20 years of service, and had received no

7

notice and did not know of the adoption of the Special Update.  They believed,

therefore, that they could not obtain pension benefits before age 65, the normal

retirement age under the Plan.

21.  On January 4, 2017, approaching age 63 and still unaware of the

Special Update, Mr. Grosso contacted by phone the Fidelity Service Center

("Fidelity"), which had become the Plan Record Keeper on January 1, 2012.  He

called to find out the amount of pension he would receive at age 65.

22.  In response, Fidelity advised him to register for, and "model" (i.e.,

calculate) his benefit on the Fidelity website.  When Mr. Grosso did so, he learned

for the first time that he had qualified for unreduced early retirement benefits on

his attainment of age 55, and that, therefore, the amount of his benefits would not

increase at age 65.

23.  Based on that information, Mr. Grosso applied immediately for his

unreduced benefits, which he started receiving effective March 1, 2017, but only

prospectively from the date of his application.

24.  Ms. Wing's experience was similar to Mr. Grosso's.  She did not know

she was entitled to unreduced early retirement benefits at age 55 until she received

a letter from Fidelity, dated December 28, 2016.  It was only then that she learned

that she had been eligible to receive unreduced early retirement benefits

commencing as far back as May 1, 2012, when she turned 55.  She applied immediately and started receiving benefits effective February 1, 2017.  As was the case with Mr. Grosso, however, Fidelity, did not pay the retroactive portion of her benefits.

## VI.  EXHAUSTION OF PLAN REMEDIES

25.  On May 19, 2017 and July 20, 2017, respectively, Mr. Grosso and Ms. Wing filed formal claims for retroactive benefits with Fidelity, which in addition to being the Plan Record Keeper, was also the first-level claim administrator for the Plan.  In support of their claims, Plaintiffs' counsel wrote, *inter alia*, that the Fourth Circuit's decision in *Helton v AT&T Pension Plan*, 709 F3d 343, 348 (4th Cir 2013) ("*Helton*"), prevented AT&T from denying them retroactive benefits under the terms of the Special Update.

26.  The *Helton* plaintiff did not learn of the Special Update until years after her 55th birthday and, like Plaintiffs, was denied retroactive benefits by AT&T. The Fourth Circuit stated that Ms. Helton became entitled to unreduced early retirement benefits at age 55, that the Special Update did not authorize the denial of retroactive benefits, and that benefits had to be paid retroactively to the date of entitlement.

9

27.  Without responding to any of Plaintiffs' arguments, Fidelity denied their claims by letters dated August 2, 2017, and October 10, 2017, respectively. Fidelity simply quoted certain provisions of the 2016 Amendment, which AT&T adopted just days before Plaintiffs applied for benefits, without providing an explanation for the denials.

28.  Fidelity also listed notices of the adoption of the Special Update allegedly sent by AT&T to Plaintiffs, as well as its own on-line interactions with Plaintiffs, without saying why they were relevant.

29.  On November 3, 2017, Mr. Grosso and Ms. Wing filed a joint appeal with the Committee, the claim administrator that reviews Fidelity's benefit denials. Plaintiffs wrote, *inter alia*, that the 2016 Amendment could not be applied to their claims without violating ERISA's anti-cutback rule.  They also wrote that the notices of the adoption of the Special Update listed in Fidelity's claim denials predated the 2016 Amendment and, therefore, even if sent by AT&T and received by Plaintiffs, could not have alerted them to the newly-adopted, written application requirement.

30.  The Committee denied both appeals on January 29, 2018.  Like Fidelity, it merely quoted the same provisions of the 2016 Amendment, and listed

10

the same alleged notifications of the adoption of the Special Update enumerated by Fidelity.

31. The Committee did not interpret the terms of the 2016 Amendment or discuss the grounds for the denials.  Its explanation consisted of one single paragraph, as follows:

> The Committee determined that under the provisions of the Plan, the facts and circumstances of this appeal, and in the exercise of its fiduciary authority, [Plaintiffs are] not eligible to elect a retroactive BCD [Benefit Commencement Date] of ... the first of the month following [their] attainment of age 55.

## VII.  CLASS ACTION ALLEGATIONS

32.  Plaintiffs bring this action on their own behalf and, pursuant to the provisions of the Federal Rules of Civil Procedure, on behalf of a Class of all others similarly situated participants in the AT&T Plan (and their surviving spouses, beneficiaries and Estates), defined as follows:

> All individuals who,
>     (1)  were AT&T management employees and participants in the AT&T Plan on January 1, 1997,;
>     (2)  became entitled to unreduced early retirement benefits under the terms of the Special Update following termination of their employment with AT&T and attainment of age 55; and
>     (3)  who either applied for those benefits after age 55 and were denied retroactive payments, or are yet to apply although older than 55.

33.  The requirements for maintaining this action as a class action under Rule 23(b)(1) and (b)(2), Federal Rules of Civil Procedure, are satisfied in that:

(a)  The Class is large in number; the exact number and identities of all Class members are currently unknown to Plaintiffs, but are known to Defendants. Upon information and belief, they number at least forty, but in all likelihood are in the hundreds.

(b)  The members of the Class are so numerous that joinder of all members is impracticable;

(c)  There are questions of law common to all members of the Class, namely:

> By denying payment of benefits for the period between age 55 and the date of a written applications, did AT&T violate (1) the terms of the governing plan document; (2) ERISA's anti-cutback rule; and (3) its fiduciary duties.

(d) Plaintiffs are members of the Class, as defined above; their claims are typical of the claims of the members of the Class and they will fairly and adequately protect the interests of the Class.  Plaintiffs' interests are coincidental with, and not antagonistic to those of the remainder of the Class, and Plaintiffs are represented by experienced ERISA counsel.

(e)  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications establishing

incompatible standards of conduct for Defendants and a risk of adjudications

which as a practical matter would be dispositive of the interests of other members

of the Class who were not parties; and

(f) Defendants have acted and/or refused to act and are likely to continue to

act and/or refuse to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive and other equitable relief with respect to the

Class as a whole.

## VII.  CLASS CLAIMS FOR RELIEF

### FIRST CLASS CLAIM FOR RELIEF:

### VIOLATION OF THE TERMS OF THE PLAN

34.   Plaintiffs bring this Claim pursuant to ERISA Section 502(a)(1)(b), 29

USC § 1132(a)(1)(B), "to recover benefits due to [them] under the terms of [their]

plan."

35. Where pension benefits are involved, the controlling plan is the one in

effect at the time of termination of covered employment.

36.  In Plaintiffs' case, that plan is the AT&T Plan as "Amended and

Restated Effective January 1, 1998" (the "1998 Plan"), which incorporated and

assigned section numbers to the provisions of the Special Update, which was in

effect when Plaintiffs terminated covered employment with AT&T.  For ease of reference, Plaintiffs will refer to the provisions of the Special Update by the section numbers assigned to them in the 1998 Plan and used by Fidelity and the Committee in the claim denials.

37.  Section 4.05(a)(ii) of the 1998 Plan provides in pertinent part:

*Individuals Eligible for the Special Update*.  An individual is eligible for the Special Update Formula if, as of January 1, 1997, he or she was: (A) an Employee and a Participant in the Pension Plan ..."

38.  Plaintiffs met both conditions of eligibility for the Special Update, because they were AT&T employees and Plan participants on January 1, 1997.

39.  Section 4.06 ("Payment of Pensions") of the 1998 Plan provides in pertinent part:

(a) *Amount of Benefits Payable*. ... (ii) Before Normal Retirement Age.  (A) For a Pension Commencement Date before the Normal Retirement Age of a Participant who is eligible for the Special Update Formula as described in Section 4.05(ii) ..., the Participant's pension benefit, payable monthly, for his or her life, equals ... (2) the Accrued Benefit determined under the Pay Base Formulas under Section 4.05, reduced by one half percent for each calendar month or part thereof by which the Participant's age at the Pension Commencement Date is less than fifty-five years, except that each Participant with a Term of Employment of thirty or more years shall receive a monthly pension benefit reduced by one fourth percent for each calendar month or part thereof by which such Participant's age at the Pension Commencement Date is less than fifty-five years.

14

40.  In turn, Section 2.29 defines "Pension Commencement Date," as follows:

> *Pension Commencement Date*.  The first day of the first month for which a pension payment is payable in the form of an annuity or any other form.

41.  In summary, Section 4.06 provides that eligible participants are entitled to unreduced early retirement benefits if their Pension Commencement Date is age 55.

42.  In sum, the Special Update provides that unreduced early retirement benefits become "payable" to eligible participants at age 55, and does not contain either a written-application requirement as a condition of *entitlement*, or a prohibition against retroactive payments.

43.  In *Helton*, AT&T based its denial of unreduced early retirement benefits retroactive to age 55 solely on Section 4.06(d) of the 1998 Plan which provides:

> [T]he failure of an Employee and Spouse to consent to a distribution while a benefit is immediately distributable, within the meaning of Section 4.0(c), shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy Section 4.06(d).

44.  After reviewing Section 4.06(d), the Fourth Circuit held that it "does not address, much less preclude, retroactive recovery of benefits ...  While the

administrator is entitled to discretion in interpreting the terms of its plan, those interpretations must be reasonable." 709 F3d at 358. *Helton* affirmed the district court's order requiring AT&T to pay retroactive benefits to Ms. Helton.

45. By denying Plaintiffs' claim unreduced early retirement benefits payable between their attainment of age 55 and the date of the applications, AT&T violated the terms of the Special Update and, therefore, ERISA.

## SECOND (ALTERNATIVE) CLASS CLAIM FOR RELIEF
## VIOLATION OF ERISA'S ANTI-CUTBACK RULE

46. Plaintiffs bring this Second (Alternative) Claim pursuant to ERISA Section 502(a)(3), 29 USC § 1132(a)(3) which, *inter alia*, authorizes "appropriate equitable relief" to redress violations of ERISA's minimum standards, including its accrual standards.

47. As construed in *Helton*, the Special Update, did not require the filing of a written application as a condition of *entitlement* to unreduced benefits; did not prohibit payments retroactive to age 55; and in fact required such payments.

48. The 2016 Amendment, as applied by AT&T in denying Plaintiffs' claims, requires for the first time the filing of a written application as a condition

of *entitlement* to unreduced early retirement benefits, thereby prohibiting their

retroactive payment.

49.  AT&T's application of the 2016 Amendment to deny Plaintiffs' claims

had the effect of reducing their accrued benefits, *i.e.*, the benefits attributable to

their service before adoption of the amendment, in violation of ERISA Section

204(g), 29 USC § 1054(g) (the "anti-cutback rule"), which provides in pertinent

part:

> (1)  The accrued benefit of a participant under a plan may not be
> decreased by an amendment of the plan ... (2)  For purposes of
> paragraph (1), a plan amendment which has the effect of (A) ...
> reducing an early retirement benefit ...with respect to benefits
> attributable to service before the amendment shall be treated as
> reducing accrued benefits.

50.  Regulations issued by the IRS to implement ERISA Section 204(g) and

its Code counterpart, Section 411(d)(6), are codified at 26 CFR § 1.411(d)-

3(a)(3)(i).  They provide in pertinent part that the rules protecting accrued benefits

"apply to a plan amendment that decreases a participant's accrued benefit *or*

*otherwise places greater restrictions or conditions on a participant's right* to

section 411(d)(6) protected benefits ..."  (Emphasis added).

51.  The 2016 Amendment "place[d] greater restrictions or conditions*"* on

the benefits Plaintiffs accrued during their employment with AT&T, by requiring a

17

written application as an additional condition of *entitlement* to unreduced early retirement benefits, thereby prohibiting retroactive payments.

52.  By applying the "greater restrictions or conditions" introduced by the 2016 Amendment to Plaintiffs' accrued benefits, Defendants reduced those benefits retroactively in violation of ERISA Section 204(g), 29 USC § 1054(g), and 26 CFR § 1.411(d)-3(a)(3)(i).

## THIRD (ALTERNATIVE) CLASS CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTIES

53.  Plaintiffs bring this Third (Alternative) Claim pursuant to ERISA Section 502(a)(3), 29 USC § 1132(a)(3), which in pertinent part authorizes a participant to bring an action to seek "appropriate equitable relief" for a breach of fiduciary duties.

54.  In the denial on review, the Committee listed a number of notices of the adoption of the Special Update allegedly sent to Plaintiffs by AT&T, and a number of interactions between Plaintiffs and the Fidelity website.  It then referred to "the facts and circumstances of this appeal" as motivating the denial of Plaintiffs' appeals, without any further explanation.

55.  Plaintiffs surmise that those "facts and circumstances" consist of the notifications and interactions listed in the claim denials, and that AT&T relies on

them to show that Plaintiffs  knew or should have known of the adoption of the

Special Update.  If the surmise is correct, then AT&T relies on this knowledge as

an additional or alternative reason why Plaintiffs should not be entitled to

retroactive benefits.

56.  All of those alleged notifications and interactions, however, predate

AT&T's adoption of the 2016 Amendment and, therefore, could not have

informed Plaintiffs of the yet-to-be-adopted requirement for a written application

as a condition of *entitlement* to unreduced early retirement benefits retroactive to

age 55.  Consequently, they cannot support AT&T's denial of retroactive benefits

and are entirely irrelevant to Plaintiffs' claims.

57.  Even assuming, however, that the notifications of the adoption of the

Special Update were somehow relevant to Plaintiffs' claims, Plaintiffs and, upon

information and belief, a large number of other eligible participants, never

received them and, therefore, remained uninformed of their rights past age 55.

58.  As found in *Helton*, AT&T's records do not reflect whether, when, how

and to whom the alleged notifications were sent, so that no presumption of receipt

can be established.

59.  The administrative record does not reflect any effort by the Committee to verify the sending of the alleged notifications, only a rubber-stamping of AT&T's unproven allegations, as also found in *Helton*.

60.  With regard to the Fidelity website, the administrative records shows that Fidelity failed to provide any notice of eligibility or entitlement to unreduced early retirement benefits at age 55 pursuant to the Special Update.

61.  Fidelity, either directly or by means of its website, had the fiduciary duty to inform Plaintiffs of the terms of the Special Update, and that no retroactive payment would be made if they delayed their applications.  AT&T does not even allege, let alone provide evidence that Fidelity complied with that fiduciary duty.

62.  ERISA Section 404(a)(1), 29 USC § 1104(a)(1), provides in pertinent part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries ... and (D) in accordance with the documents and instruments governing the plan ..."

63.  By denying retroactive benefits to Plaintiffs and, therefore, causing a forfeiture, the AT&T Plan Administrator did not discharge its duties "solely in the interest of participants and beneficiaries" or "in accordance with the documents and instruments governing the plan," but solely in the interest of AT&T, thereby

20

breaching its fiduciary duties under ERISA Section 404(a)(1), 29 USC

§ 1104(a)(1).

## VIII.  PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs pray that this Court:

      A.  Assume jurisdiction over this action;

      B.  Certify this action as a Class Action;

      C.  Appoint Plaintiffs' counsel as Class counsel;

      D.  Declare that Plaintiffs' right to unreduced early retirement benefits are governed by the provision of the Plan in effect when they left covered employment, namely by the Special Update;

      E.  Declare that the Special Update does not require a written application as a condition of *entitlement* to unreduced early retirement benefits and, therefore, does not prohibit, and in fact requires payments retroactive to age 55;

      F.  Declare that Defendants violated ERISA's anti-cutback rule by applying to Plaintiffs a new condition of entitlement first adopted by the 2016 Amendment;

      G.  Declare, alternatively, Defendants breached their fiduciary duties in denying retroactive benefits to Plaintiffs where they failed to provide fair and

timely notice to Plaintiffs of their entitlement to unreduced early retirement

benefits at age 55;

H.  Order Defendants to pay Plaintiffs and the Class unreduced early

retirement benefits from the date of their respective applications retroactive to

their 55th birthdays, with 9% compound interest;

I.  Award Plaintiffs and the Class the appropriate equitable relief to

which they may be entitled, such as injunctive relief, reformation and estoppel;

J.  Award Class Counsel as attorney's fees the greater of (i) up to 33%

of the value of the common fund generated by this action or (ii) the reasonable

attorney's fees authorized by ERISA Section 502(g)(1), 29 USC § 1132(g)(1), plus

costs and expenses.   If the fee amount generated by the common fund is the

greater of the two, then Plaintiffs respectfully request that the Court order

Defendants to pay the ERISA statutory fees to the Class for the purpose of

reducing the Class' common fund liability for attorney's fees to Class counsel;

K.  Award Plaintiffs, as Class Representatives, an incentive award

payable from the common fund generated by this action; and

   L.  Award Plaintiffs and the Class additional or different relief as the

Court may deem just and proper.

Dated: Brooklyn, New York
   July 17, 2018

         s/ Edgar Pauk
         Edgar Pauk
         1066 Union Street
         Brooklyn, New York 11225
         (718) 399-2023
         E-mail: lawoffice@edgarpauk.com


         Robert L. Liebross
         39 Broadway, Suite 1620
         New York, NY 10006
         (212) 566-2151
         E-mail: rliebross@liebrosslaw.com

         Counsel for Plaintiffs