UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
VINCENT C. GROSSO, et al., on behalf of                     :
Themselves and All Others Similarly Situated,               :
                                              Plaintiffs,   :       18 Civ. 6448 (LGS)
                                                            :
                     v.                                     :       OPINION AND ORDER
                                                            :
AT&T PENSION BENEFITS PLAN, et al., ,                       :
                                              Defendants.   :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2019

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Vincent C. Grosso and Patricia M. Wing commenced this action against the AT&T Pension Benefit Plan (the "Plan") and AT&T Services Inc., as Plan Administrator ("Plan Administrator") after Defendants denied Plaintiffs' respective requests for retroactive unreduced pension benefits allegedly in violation of the Employee Retirement Income Security Act ("ERISA"). The parties filed cross-motions for summary judgment. For the reasons stated below, both motions are denied, and the case is remanded to the Plan Administrator.

I.  BACKGROUND

   A.   The Plan

Prior to April 28, 1997, the Plan did not provide for the payment of pension benefits before the normal retirement age of sixty-five for participants with less than twenty years of service. On April 28, 1997, AT&T amended the Plan to provide, in pertinent part that vested management employees who were employed by AT&T and participants in the Plan on January 1, 1997, would be eligible to collect early retirement benefits before age sixty-five (the "Special Update"). The Special Update provided that early retirement benefits would be reduced if

collected before age fifty-five, and unreduced thereafter. The Special Update was retroactive to January 1, 1997, became effective August 1, 1997, and was incorporated in the 1998 restatement of the Plan (the "1998 Plan"). The version of the Plan in effect at the time this dispute arose was the Amended and Restated 2016 AT&T Pension Benefit Plan (the "2016 Plan").

B. The Plaintiffs

1. Grosso

Grosso began his employment with AT&T on January 19, 1979, as a management employee eligible to participate in the Plan. On July 3, 1997, Grosso terminated his employment with AT&T, and qualified for early pension payments under the Special Update. In April 2009, Grosso turned fifty-five years old.

On January 10, 2017, Grosso received a service request message from the Fidelity Service Center, the Plan recordkeeper as of January 1, 2012 ("Fidelity"), informing him that "after age [fifty-five] an Early Retirement Factor of 1.00 is used to calculate your pension benefit. Therefore, there is no change in your benefit amount." Shortly thereafter, on January 17, 2017, Grosso contacted Fidelity to initiate the commencement of his pension benefit and to confirm his first available Benefit Commencement Date ("BCD"). Fidelity informed Grosso that he could not elect a BCD prior to February 1, 2017, and Grosso received his first payment of unreduced pension benefits on March 1, 2017. Fidelity paid Grosso unreduced pension benefits going forward from February 1, 2017, but denied him benefits retroactive to his 55th birthday, which had occurred in 2009.

On May 19, 2017, Grosso submitted to Fidelity a formal claim for unreduced benefits retroactive to his 55th birthday. Fidelity denied the claim on August 2, 2017.

2

2. **Wing**

From February 23, 1980, through March 24, 1995, Wing was employed by Bell Communications Research, Inc. ("Bellcore"). On March 31, 1995, Wing was hired by AT&T as a management employee eligible to participant in the Plan. In May 1995, Wing ported her prior Bellcore service to AT&T, and her Term of Employment with AT&T was deemed to commence February 29, 1980. On June 13, 1997, Wing terminated her employment with AT&T and qualified for pension payments under the Special Update. In April 2012, Wing turned fifty-five years old.

In December 2016, Fidelity informed Wing that after she turned fifty-five years old, no Early Retirement Factor would be applied to reduce her pension benefit. Shortly thereafter, Wing contacted Fidelity to initiate the payment of her pension benefit and to confirm the first available BCD. Fidelity informed Wing that her first available BCD was January 1, 2017. On February 20, 2017, Wing received her first payment of benefits. Fidelity awarded Wing unreduced pension benefits going forward from January 1, 2017, but denied her benefits retroactive to her 55th birthday, which had occurred in 2012.

On July 20, 2017, Wing submitted to Fidelity a formal claim for unreduced benefits retroactive to her 55th birthday. Fidelity denied Wing's claim on October 10, 2017.

**C.  The First BPC Denials**

Plaintiffs appealed the Fidelity denials to the AT&T Benefit Plan Committee ("BPC") on November 3, 2017. The BPC, on behalf of the Plan Administrator, denied their appeals in separate decisions on January 29, 2018 ("First BPC Denials").

The First BPC Denials rely on the 1998 Plan to determine the pension amounts owed to Grosso and Wing, and the 2016 Plan to determine whether they are eligible to receive retroactive benefits. The First BPC Denials begin with a paragraph stating the BPC's decision to deny retroactive benefits. Next are "Plan Provisions" which are excerpts of the relevant Plan provisions but with no analysis. Next is a "Facts" section, including facts about each Plaintiff's respective employment and purported receipt of notice of the Special Update, and related communications between Plaintiffs and Fidelity. The First BPC Denials conclude with a "Determination of the Committee", which states, "After thoroughly examining the file compiled with respect to the review of [Plaintiff's] denied claim, including any materials you submitted with [the] appeal, the Committee denied [the] appeal."

### D. The Second BPC Denial

Plaintiffs commenced this action on July 17, 2018. Defendants informed the Court that, prior to filing their respective motions for summary judgment, they would seek clarification of the Plan Administrator's interpretation of the Plan regarding Plaintiffs' denials. On December 3, 2018, the BPC issued a second denial of the Grosso and Wing claims ("Second BPC Denial").

#### 1. The Written Election Requirement

The Second BPC Denial states that the 1998 Plan requires participants to submit a written election to become entitled to receive unreduced pension benefits before turning sixty-five pursuant to the Special Update. The BPC relies on Sections 4.06(a), 4.06(b), and 4.06(d) of the 1998 Plan to reach this conclusion. The BPC states that § 4.06(a) "provides that the benefit payable to Participants eligible for the Special Update . . . will be reduced for Participants who commence their benefit before age [fifty-five], but that such reduction will not be applied with respect to eligible Participants who commence their benefit on or after age [fifty-five]." The

4

BPC next states that § 4.06(b) provides that the benefit will be payable as an annuity unless the Participant elects to receive his or her pension in another prescribed form of payment, which generally requires approval of a written application. Finally, the Second BPC Denial interprets § 4.06(d), which is titled "Commencement of Benefits" and states in part:

> A participant may, with the consent of his or her Spouse, commence his or her pension as of the first day of any month following the month in which termination of employment from the AT&T Controlled Group occurs. . . . Pension payments shall be made as soon as administratively practicable on the first day of any month following the Pension Commencement Date.
>
> Unless the Participant elects otherwise, distribution of benefits will begin no later than the sixtieth day after the latest of the close of the Plan Year in which:
>
> (i) the Participant attains age sixty-five (or Normal Retirement Age, if earlier);
>
> (ii) occurs the tenth anniversary of the year in which the Participant commenced participation in the Pension Plan; or,
>
> (iii) the Participant terminates service with the AT&T Controlled Group.

The BPC concluded that the three provisions, when read together,

> requir[e] that Participants must submit an election in order to be entitled to unreduced pension benefits before [turning sixty-five] pursuant to the Special Update. Section 4.06(b)(iii) provides that Participants "may" make a qualified election to have their benefits paid in one of the forms available under the plan, and that such election must be in writing. Section 4.06(a)(ii) and Section 4.06(d) both contemplate that benefits may commence before [turning sixty-five], but Section 4.06(d) provides that commencement of benefits before [turning sixty-five] requires an affirmative election by the Participant. The first paragraph of Section 4.06(d) provides that a Participant "may" commence his or her benefit before [turning sixty-five] if he or she has terminated employment, and the use of the word "may" means that early commencement is optional and conditional, not the default rule. In addition, the first paragraph of 4.06(d) requires spousal consent as a condition of early commencement, which further demonstrates that early commencement is optional and conditional.
>
> The second paragraph of Section 4.06(d) further confirms that early commencement is optional and conditional, and not the default rule. Unlike the

5

> first paragraph of 4.06(d) which uses the word "may," the second paragraph of 4.06(d) provides that distribution of benefits "will" begin no later than the latest of three dates, "[u]nless the Participant elects otherwise[.]"

The Second BPC Denial relies on the same interpretation of § 4.06(d) to conclude that this provision sets an automatic default benefit commencement date absent some action by the participant.

The Second BPC Denial also states that the 2016 Plan requires that participants submit a written election to become entitled to receive unreduced pension benefits before turning sixty-five pursuant to the Special Update. The BPC relied on § 12.1.2 to reach this conclusion: The Second BPC Denial provides that this section

> states that if a Participant who is otherwise eligible and consents to receipt before [age sixty-five] "requests in writing to receive payment of his Pension Benefit on a date before his Normal Retirement Age, . . . such Participant's Annuity Starting Date will be the date so requested ***or, if later, as soon as administratively practicable after the requirements of making such an election have been fully completed***."

(emphasis in original). As eligibility for receipt of pension benefits before normal retirement age requires a written election under the 2016 Plan, the BPC concluded that a participant is not entitled to benefits pursuant to the Special Update before normal retirement age until an election is made.

### 2. Notice of the Special Update

The Second BPC Denial concludes that if a participant was aware of the Special Update after turning fifty-five but before requesting the commencement of benefits, the participant "may, depending on the circumstances" be denied retroactive unreduced benefits. The BPC relied on § 22.7.1 of the 2016 Plan to reach this conclusion, which states that "if an error has occurred in connection with the Plan . . . . the Plan Administrator may correct the error to the

6

extent reasonably practicable by taking any action it deems appropriate to effect such correction."

Having established that notice can impact whether a participant will be paid retroactive benefits under the Special Update, the BPC analyzed whether Plaintiffs had received notice of the Special Update after turning fifty-five. The Second BPC Denial concludes that Grosso was provided notice several times, and that he also acknowledged notice once in a telephone call. The Second BPC Denial also concludes that Wing repeatedly was provided notice, but that data errors caused her to receive erroneous information in March 2014. Therefore, the BPC awarded Wing benefits under the Special Update "retroactive to April 1, 2014, which would have been the earliest commencement date after Ms. Wing was provided with inaccurate information." The BPC did not grant Wing benefits retroactive to her 55th birthday, and granted Grosso no retroactive benefits.

### E. The Instant Motions

Plaintiffs now move for summary judgment on their first claim for relief, which alleges that Defendants' denial of retroactive benefits violated the 1998 Plan and 29 U.S.C. § 1132(a)(1)(B). Plaintiffs other two claims for relief are in the alternative. Defendants' motion for summary judgment seeks to dismiss the Complaint "in its entirety with prejudice" but addresses only Plaintiff's first claim for relief.

## II. LEGAL STANDARD

"In ERISA motions where a plaintiff challenges the denial of benefits, courts generally 'treat the parties' submissions as cross-motions for summary judgment." *Ricciardi v. Metropolitan Life. Ins. Co.*, No. 16 Civ. 3806, 2019 WL 652883, at *7 (S.D.N.Y. Feb. 15, 2019)

(citing *Kagan v. Unum Provident*, 775 F. Supp. 2d 659, 672 (S.D.N.Y. 2011)). "Substantive ERISA law determines the proper standard of review that the Court should apply in reviewing the decision of the plan administrator, as well as whether the Court can consider materials beyond the administrative record." *Id.* (citing *Gannon v. Aetna Life Ins. Co.*, No. 5 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007).

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

The parties' motions raise four[1] issues: (1) whether collateral estoppel precludes Defendants from litigating whether participants become entitled to retroactive benefits under the

---

[1] The First BPC Denials are not addressed beyond this footnote. The First BPC Denials do not comply with the Department of Labor's claims-procedure regulation, and this failure is not inadvertent and harmless. Accordingly, the First BPC Denials receive *de novo* review. *See Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2016). Under *de novo* review, the Court has the discretion to remand the case to the Plan Administrator for further review if the conclusions were rejected. *See Easter v. Cayuga Medical Center at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 633-34 (N.D.N.Y 2016) (remanding to the Plan Administrator after reviewing the administrative record *de novo*). The Second BPC Denial functions in effect like a decision after remand of the First BPC Denials. Consequently, the focus of this opinion is the BPC's most recent interpretation. This promotes efficiency, predictability, and uniformity in the administration of employee benefit plans. *See Conkright v. Frommert*, 559 U.S. 506, 518 (2010) ("[T]he interests in efficiency, predictability, and uniformity—and the manner in which

8

1998 Plan upon turning fifty-five years old; (2) whether the standard of review applicable to the Second BPC Denial is *de novo* or arbitrary and capricious; (3) whether under the 1998 Plan, a written election is necessary for a participant to receive pension benefits under the Special Update before age sixty-five; and (4) whether under the 2016 Plan, a written election is necessary for a participant to receive such benefits.

### A. Collateral Estoppel

Issue preclusion, or collateral estoppel, does not prevent Defendants from litigating whether Plaintiffs are entitled to retroactive benefits from age fifty-five. "Nonmutual offensive collateral estoppel is a species of collateral estoppel (or "issue preclusion," as it is also known) that operates to 'preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.'" *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 77 n.1 (2d Cir. 2019) (citing *Faulkner v. National Geographic Enters, Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)). "For issue preclusion to apply, the same 'issue of fact or law' must have been 'actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). The first requirement for finding collateral estoppel is that "the issues in both proceedings must be identical." *Bifolck*, 936 F.3d at 79.

Here, Plaintiffs assert that Defendants are collaterally estopped from disputing that Plaintiffs are entitled to full pension benefits retroactive to when they turned fifty-five. In *Helton*, the Fourth Circuit found that AT&T's decision to deny the plaintiff retroactive benefits, in the circumstances of that case, was unreasonable, and the court did not reach any broader

---

they are promoted by deference to reasonable plan construction by administrators—do not suddenly disappear simply because a plan administrator has made a single honest mistake").

issues about retroactive benefits. *See Helton v. AT&T Inc.*, 709 F.3d 343 (4th Cir. 2013). The court said the following about § 4.06(d) in the 1998 Plan:

> This provision does not address, much less preclude, retroactive recovery of benefits, *particularly in cases of administrative error*. While the administrator is entitled to discretion in interpreting the terms of its plan, those interpretations must be reasonable. . . . *Here*, the administrator's interpretation was not reasonable.

*Id*. at 358 (citation omitted, emphasis added). The court also relied on the Plan provision that empowers the Plan Administrator "to remedy past errors, like the failure to adequately inform Helton of a material plan change." *Id*. (citing Section 22.7.1 of the 1998 Plan). The Fourth Circuit did not address the additional question that arises in this case -- whether participants are entitled to retroactive benefits in the absence of administrative error. Consequently, the doctrine of collateral estoppel does not apply.[2]

### B. Whether Eligibility Requires a Written Election

The central issue is whether a written election is necessary for a participant to receive pension benefits pursuant to the Special Update under the 1998 Plan and the 2016 Plan. In the Second BPC Denial, the BPC concluded that both versions of the Plan require participants to submit a written election in order to be entitled to receive unreduced pension benefits.

As discussed below, (1) the applicable standard of review for the Second BPC Denial is the arbitrary and capricious standard; (2) the BPC's determination that the 2016 Plan requires a written election to receive benefits under the Special Update was not arbitrary or capricious based on the plain language of the Plan, but (3) the BPC's determination that the 1998 Plan

---

[2] The District Court in *Helton* also did not address whether participants are entitled to receive full pension benefits retroactive to when they turned fifty-five. *See Helton v. AT&T, Inc.*, 805 F.Supp.2d 234 (E.D. Va. 2011), *aff'd* 709 F.3d 343 (4th Cir. 2013).

10

similarly requires a written election was arbitrary and capricious because it was not supported by substantial evidence. The matter is therefore remanded to the Plan Administrator to determine whether the 1998 Plan requires a written election in order to receive benefits under the Special Update, based on extrinsic or other evidence.

Both versions of the Plan must be analyzed because ERISA's anti-cutback rule provides that an "accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). "[A]n amendment placing materially greater restrictions on the receipt of the benefit 'reduces' the benefit just as surely as a decrease in the size of the monthly benefit payment." *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004); *see also Morrone v. Pension Fund of Local No. One, I.A.T.S.E.*, 867 F.3d 326, 333 (2d Cir. 2017) (noting that the anti-cutback rule "privileges substance over form" and citing *Central Laborers' Pension Fund* as binding law).

The interpretation of the 1998 Plan is determinative because, if it does not require written notice, then under the anti-cutback rule, the 1998 Plan would apply and Plaintiffs would prevail. But if the 1998 Plan does require written notice, the anti-cutback rule would not interfere with the application of the 2016 Plan and Defendants would prevail.

### 1. The Standard of Review

At issue is the Second BPC Denial, and the standard of review is the arbitrary and capricious standard.

Federal courts review a Plan Administrator's denial *de novo* "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case an arbitrary and capricious standard applies."

11

*Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F.3d 42, 51 (2016) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The parties do not dispute that the Plan Administrator here has been granted such authority.

Despite such authority, "a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo*, 819 F.3d at 58 (2016). Plaintiffs do not contend that the Second BPC Denial fails to comply with the Department of Labor's claims procedures.[3] Consequently, the arbitrary and capricious standard applies to the review of the Second BPC Denial. *See Halo*, 819 F.3d at 58 (2016).

"Under the arbitrary and capricious standard of review, a court may overturn an administrator's decision to deny ERISA benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Munnelly v. Fordham University Faculty*,

---

[3] Plaintiffs contend instead that the Second BPC Denial should not be considered because it was submitted after the commencement of this litigation and at Defendants' counsel's request. As this argument asks whether to admit additional *interpretations* of the Plan to the record, as opposed to additional *evidence* of the Plan, the good cause standard as stated in *Halo* is inapplicable. *See Halo*, 819 F.3d at 60. Instead, the Supreme Court's decision *Conkright v. Frommert*, 559 U.S. 506 (2010) governs. In *Conkright*, a plan administrator submitted an alternate interpretation of the plan in an affidavit to the District Court after the Second Circuit held that the initial interpretation was unreasonable. *See id.* at 509-511. The District Court then held that it did not owe any deference to the plan administrator's alternate interpretation, and the Second Circuit affirmed. *Id*. The Supreme Court rejected this "one-strike-and-you're-out" approach and held that the District Court owed deference to the interpretation submitted by the plan administrator after the commencement of litigation. *Id*. at 512. *Conkright* provides a sound basis to find that a plan administrator may submit additional interpretations to the record when doing so promotes efficiency, predictability, and uniformity in the administration of employee benefit plans. *See id*. at 517-18 (quoting *Fort Halifax Packaging Co. v. Coyne*, 482 U.S. 1, 11 (1987)).

12

316 F. Supp. 3d 714, 726 (S.D.N.Y. 2018) (quoting *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009)). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker and [] requires more than a scintilla of evidence but less than a preponderance." *Id*. (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995)). "[A]bsent a showing of bad faith or arbitrariness, the court will not disturb the administrator's interpretations of the plan as long as they are consistent with the plan's terms and purpose." *Id*. at 726-27 (quoting *Sansevera v. DuPont de Nemours & Co.*, 859 F. Supp. 106, 112 (S.D.N.Y. 1994)). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control . . . . [But] where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) (internal citations removed); *accord Brightman v. 1199SEIU Health Care Employees Pension Fund*, No. 18 Civ. 4932, 2019 WL 3006471, at *10 (S.D.N.Y., July 10, 2019).

Courts "apply a federal common law of contract [to ERISA interpretation], informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." *Feifer v. Prudential Ins. Co. of Am.*, 306 F. 3d 1202, 1210 (2d Cir. 2002); *see also Kirkendall v. Halliburton, Inc.*, 760 F. App'x 61, 65 (2d Cir. 2019) (summary order).

### 2. The BPC's Interpretation of the 2016 Plan in the Second BPC Denial

The BPC's interpretation of the 2016 Plan as requiring written notice to receive pension benefits under the Special Update was not arbitrary or capricious. Section 12 of the 2016 Plan is

titled "Time of Payment of Benefits/Payee." Sub-section 12.1 is titled "Time of Payment of Pension Benefit," and states:

> [i]f a Participant (1) is eligible for an Early Retirement Pension, (2) requests in writing to receive payment of his Pension Benefit on a date before his Normal Retirement Age, and (3) consents in writing within the Election Period to receive payment before his Normal Retirement Age (with such consent acknowledging that the Participant has been informed of his right to defer payment to such date and has elected to waive that right), such Participant's Annuity Starting Date will be the date so requested or, if later, as soon as administratively practicable after the requirements of making such an election have been fully completed.

"[M]ore than a scintilla of evidence" supports the BPC's conclusion in the Second BPC Denial that this provision requires a participant to make a written election in order to be entitled to benefits pursuant to the Special Update. *Munnelly*, 316 F. Supp. 3d at 726. The Special Update is a Plan program that grants participants early retirement benefits that are not reduced if collected after age fifty-five. Section 12.1.2 states three conditions to receiving such benefits, one of which is a written request to receive payment before the "Normal Retirement Age," which is usually age sixty-five. The BPC's interpretation is consistent with the plain words of the Plan. Even if Plaintiffs have a rational but conflicting interpretation, the arbitrary and capricious standard requires that "the trustees' interpretation must be allowed to control." *O'Shea*, 55 F.3d at 112.

### 3. The BPC's Interpretation of the 1998 Plan in the Second BPC Denial

The conclusion in the Second BPC Denial that the *1998 Plan* requires written notice to receive benefits under the Special Update is arbitrary and capricious because it is "unsupported by substantial evidence." *See Munnelly*, 316 F. Supp. 3d at 726 (quoting *Hobson*, 574 F.3d at 83). The 1998 Plan -- and particularly § 4.06(d), which is key to the BPC's interpretation -- does not say whether or not a participant is entitled to receive benefits under the Special Update at age

fifty-five in the absence of written notice requesting them. Put differently, the 1998 Plan does not say whether a participant is entitled to benefits retroactive from the date of notice to age fifty-five. The Plan is therefore ambiguous without the benefit of extrinsic evidence.

The BPC concludes that § 4.06(d) requires participants to submit a written election to be entitled to benefits under the Special Update in light of §§ 4.06(a) and (b). The Second BPC Denial provides that these three provisions, when read together,

> requir[e] that Participants must submit an election in order to be entitled to unreduced pension benefits before [turning sixty-five] pursuant to the Special Update. Section 4.06(b)(iii) provides that Participants "may" make a qualified election to have their benefits paid in one of the forms available under the plan, and that such election must be in writing. Section 4.06(a)(ii) and Section 4.06(d) both contemplate that benefits may commence before [turning sixty-five], but Section 4.06(d) provides that commencement of benefits before [turning sixty-five] requires an affirmative election by the Participant. The first paragraph of Section 4.06(d) provides that a Participant "may" commence his or her benefit before [turning sixty-five] if he or she has terminated employment, and the use of the word "may" means that early commencement is optional and conditional, not the default rule. In addition, the first paragraph of 4.06(d) requires spousal consent as a condition of early commencement, which further demonstrates that early commencement is optional and conditional.
>
> The second paragraph of Section 4.06(d) further confirms that early commencement is optional and conditional, and not the default rule. Unlike the first paragraph of 4.06(d) which uses the word "may," the second paragraph of 4.06(d) provides that distribution of benefits "will" begin no later than the latest of three dates, "[u]nless the Participant elects otherwise[.]"

This interpretation is unsupported by the text of the 1998 Plan. Section 4.06(d), which is titled "Commencement of Benefits," does not answer the question. It begins by describing when after retirement a participant "may commence his or her pension." This could refer either to the entitlement to benefits or the payment of benefits. The remainder of the paragraph suggests the latter; it states on what day "[p]ension *payments*" will begin, and says that the "*distribution* of benefits" will begin in substance at age sixty-five unless an election is made to begin earlier.

15

The section refers to the Pension Commencement Date, which is defined as the "first day of the first month for which a pension payment is payable." The section does not expressly address a participant's entitlement to benefits, i.e. whether benefits begin to accrue at age fifty-five before payment commences. Unlike the 2016 Plan, nothing in § 4.06(d) of the 1998 Plan says that a participant is entitled to benefits starting at age sixty-five (referred to in the Plan as the Normal Retirement Age) unless one gives written notice to obtain earlier benefits. A separate section of the 1998 Plan -- § 4.05(a)(ii), titled "Individuals Eligible for the Special Update Formula" -- identifies who is "eligible for the Special Update Formula . . . as of January 1, 1997." Nothing in § 4.05(a)(ii) states that a written election is required for eligibility, nor does it say when an eligible participant becomes entitled to benefits.

Sections 4.06(a) or (b) do not answer the question of entitlement, nor do they suggest how to interpret § 4.06(d). Section 4.06(a), titled "Amount of Benefit Payable," makes no reference to § 4.06(d) and provides that the amount of payment will be reduced if a participant commences his or her benefits before age fifty-five. Section 4.06(b), titled "Method of Distribution," makes no reference to § 4.06(d) and specifies the type of annuity the participant will receive to pay the benefit, unless the participant elects in writing to receive payment in another form. These sections do not say when a participant is entitled to the benefit or whether the benefit is dependent on, or independent of, a participant's written request to commence receipt of the benefits. Nothing else in the 1998 Plan -- which is over a hundred pages and includes ten articles and nine appendices -- appears to answer these questions.

Ordinarily, if there were two reasonable competing interpretations of a plan, under the deferential standard, the BPC's interpretation would prevail. But here deference is unwarranted

16

because the language cited as the basis for the interpretation does not support it. *See O'Shea*, 55 F.3d at 112; *accord Brightman,* 2019 WL 3006471, at *10.[4]

### C. Remand to the Plan Administrator

"Our precedents make clear that even where we conclude a plan administrator's finding was arbitrary and capricious, we will typically not substitute our own judgment, but rather will return the claim for reconsideration unless we 'conclude that there is no possible evidence that could support a denial of benefits.'" *Dimopoulou v. First Unum Life Ins. Co.*, 162 F. Supp. 3d 250, 262 (S.D.N.Y. 2016) (quoting *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490 (2d Cir. 2013)); *see also Brightman*, 2019 WL 3006471, at *14.

The matter is remanded to the Plan Administrator to determine whether the 1998 Plan requires a participant to make a written request to commence entitlement to Special Update benefits. The Plan Administrator is directed to rely on all the tools of contract interpretation to perform this analysis, including any extrinsic evidence and any other relevant provisions of the 1998 Plan that have not yet been addressed. *See Feifer*, 306 F. 3d at 1210 (2d Cir. 2002) (Courts "apply a federal common law of contract [to ERISA interpretation], informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions"); *see also Kirkendall*, 760 F. App'x at 65. For example, when the Special Update was considered, were there projections of the costs of the Special Update program to the Plan? And if so, did they include assumptions about whether all or only part of the otherwise eligible employees would receive benefits beginning at age fifty-five? An assumption that all would be paid

---

[4] This Opinion does not reach the issue of the adequacy of notice regarding the Special Update provided to Plaintiffs, or the permissibility of any evidence the BPC relied on to reach this determination. These arguments may be moot depending on the BPC's determination on remand.

suggests that no written election was intended for entitlement.  An assumption that only part would be paid, suggests that a written election was intended.

The schedule for remand is as follows:  Defendants have thirty days from the date of this Order to submit a memorandum of law and any additional evidence they would like the Plan Administrator to consider in making its determination.  Plaintiffs have fifteen days after Defendants' submission to file a memorandum of law in response.  After receiving both submissions, the Plan Administrator then has thirty days to review this information -- and any additional information it obtains on its own -- and make its decision.  These dates may be extended upon application to the Court for good cause shown.  The parties are directed to report to the Court the Plan Administrator's decision promptly after it is rendered.

## IV. CONCLUSION

For the reasons herein, Plaintiffs' and Defendants' motions for summary judgment are DENIED.  The case is REMANDED to the Plan Administrator to determine whether, based on extrinsic and other evidence, a participant must give written notice to be entitled to receive Special Update benefits under the 1998 Plan.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 28, 34 and 44.

Dated:  September 30, 2019
      New York, New York

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE