UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

VINCENT GROSSO, et al.,            :
                     Plaintiffs,  :
                                   :          18 Civ. 6448 (LGS)
           -against-         :
                                   :     AMENDED ORDER AND
AT&T PENSION BENEFIT PLAN, et al.,  :         OPINION
                      Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

On May 25, 2021, the Court reviewed the BPC's decision and issued an Opinion and

Order (the "Second Opinion") granting Defendants' second motion for summary judgment.  *See*

*Grosso v. AT&T Pension Benefit Plan*, No. 18 Civ. 6448, 2021 WL 2115210 (S.D.N.Y. May 25,

2021).  On June 8, 2021, Plaintiffs filed a motion for reconsideration requesting that the Court

review the BPC's finding in the Second BPC Denial that adequate notice was given to Plaintiffs.

On October 6, 2021, Plaintiffs filed a motion for relief from the Second Opinion based on

purported intervening controlling authority.  For the following reasons, both motions are denied.

## I.    BACKGROUND

Familiarity with the facts is assumed.  All capitalized terms herein have the same

meaning as in the prior summary judgment decisions.  *See Grosso v. AT&T Pension Benefits*

*Plan,* No. 18 Civ. 6448, 2019 WL 4805809 (S.D.N.Y. Sept. 30, 2019); *Grosso*, 2021 WL

2115210.

On December 3, 2018, the BPC issued the Second BPC Denial, in which it interpreted the

1998 Plan as follows:  First, to receive unreduced pension benefits after reaching fifty-five years

of age but before attaining Normal Retirement Age, employees were required to submit a written

application.  Second, if a participant failed to apply for unreduced benefits, the participant might

nevertheless be entitled to retroactive benefits if the participant did not receive notice of the availability of such benefits.

The Second BPC Denial also found that both Plaintiffs Grosso and Wing had received (1) the April 28, 1997, Letter & Fact Sheet (the "April 1997 Notice"), (2) the Termination and Related Notice (dated July 3, 1997, and June 13, 1997, for Grosso and Wing, respectively) and (3) the August 1997, Your Pension Improvements Booklet (the three documents, collectively, the "Notice Letters"). The BPC further found that Grosso was provided notice by an April 30, 2013, Letter and that Grosso's recorded call to Fidelity Service Center Website confirms his receipt of that letter.

The BPC denied Grosso's claim for benefits retroactive to age fifty-five, finding that he had not filed a written application and had been provided adequate notice. The BPC partially granted Wing's claim for benefits retroactive to April 1, 2014, because Wing had been given erroneous information about her pension benefits when she contacted the Fidelity Service Center in March 2014. Wing still seeks benefits for the period between May 1, 2012, when she turned fifty-five, and April 1, 2014.

Plaintiffs filed this action challenging the denial of retroactive pension benefits. The parties agreed that the action should be adjudicated with the filing of cross-motions for summary judgment. On September 30, 2019, the Court issued an opinion and order (the "First Opinion") denying the parties' first cross-motions for summary judgment. The case was remanded for the Plan Administrator to reconsider whether a participant must give written notice to be entitled to receive Special Update benefits under the 1998 Plan, considering additional extrinsic evidence. *Grosso*, 2019 WL 4805809, at *9. The First Opinion did not reach the question of whether the BPC was proper in finding that Plaintiffs had received adequate notice. *Id.* at *9 n.4.

On April 28, 2020, having considered additional evidence, the BPC issued a third denial of benefits (the "Third BPC Denial"), finding again that written application was required.  The Third BPC Denial did not revisit the adequate notice issue.  The parties filed a renewed cross-motions for summary judgment, this time addressing only whether written election was required.  On May 25, 2021, the Court issued the Second Opinion, in which it agreed with the Third BPC Denial and granted Defendants' summary judgment.

On June 8, 2021, Plaintiffs filed a motion for reconsideration seeking a ruling on the notice issue and seeking summary judgment on behalf of Plaintiffs on the ground that Grosso and Wing had not received adequate notice.  On June 24, 2021, Defendants responded that Plaintiffs had received adequate notice.  The parties supplemented their filings on June 28, 2021, and June 30, 2021.

On October 6, 2021, Plaintiffs filed a motion for relief under Rules 54(b) and 60(b)(1) and (6), Fed. R. Civ. P., challenging the substantive holding in the Second Opinion based on purported new authority holding that a pension plan may not condition entitlement to pension benefits based on ambiguous plan language.  *See Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021).  At the court's direction, Defendants responded on November 12, 2021.  On November 19, 2021, Plaintiffs filed a reply.

## II.    DISCUSSION

### A.  The Motion for Reconsideration Is Denied

#### 1.   Legal Standard for Reconsideration

"A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL*

*Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted); *accord Lewis v. Nissan N. Am. Inc.*, No. 04 Civ. 562, 2021 WL 807126, at *1 (S.D.N.Y. Mar. 3, 2021).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *accord JLM Couture, Inc. v. Gutman*, No. 20 Civ. 10575, 2021 WL 2227205, at *5 (S.D.N.Y. June 2, 2021).  The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (internal quotation marks omitted).

"It is black letter law that a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court[.]" *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (internal quotation marks omitted) (summary order); *accord Mader v. Experian Info. Sols., LLC*, No. 19 Civ. 3787, 2020 WL 5416337, at *1 (S.D.N.Y. Sept. 3, 2020).

In reviewing the BPC's decisions, the Court applies the arbitrary and capricious standard for the reasons stated in the First Opinion.  *See Grosso*, 2019 WL 4805809, at *6-7.  This standard requires the Court to overturn the BPC's decision if it was "without reason . . . unsupported by substantial evidence or . . . erroneous as a matter of law." *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 105 (2d Cir. 2017) (internal quotation marks omitted).  "[T]he substantial evidence standard is decidedly lenient.  It is very deferential, even more so than the clearly erroneous standard." *Metro-North Commuter R.R. Co. v. U.S. Dep't of Labor*, 886 F.3d 97, 109 (2d Cir. 2018) (internal quotation marks omitted).

### 2.   Denial of Reconsideration on Procedural Grounds

Plaintiff's motion for reconsideration is denied because neither party raised the issue of adequate notice on their renewed motion for summary judgment.  On September 14, 2020, the parties were directed to renew their cross-motions for summary judgment.  When they did so, neither party raised the sufficiency of Plaintiffs' notice.  Although Defendants flagged the issue in their pre-motion letter, Plaintiffs on their motion did not ask the Court to reverse the BPC's findings on the adequacy of notice provided to Wing and Grosso respectively, nor did Defendants raise those findings.  Plaintiffs' current challenge to the adequacy of notice does not rest on an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104 (internal quotation marks omitted).  There is no clear error or manifest injustice because, as explained below, Defendants are entitled to summary judgment on the notice issue as well.

### 3.   Denial of Reconsideration on the Merits

The finding in the Second BPC Denial that Plaintiffs received adequate notice was not arbitrary or capricious.  The BPC found that AT&T sent the Notice Letters to those who were active management employees.  The PBC relied on testimony from two trial witnesses in *Helton v. AT&T, Inc*., 805 F. Supp. 2d 234, 238-39 (E.D. Va. 2011), *aff'd*, 709 F.3d 343 (4th Cir. 2013), as well as information from the Plan's recordkeeper.  Based on this evidence, the BPC concluded that Plaintiffs, as active management employees at that time, received the Notice Letters notwithstanding their denial of having received them.

Plaintiffs argue that the BPC's decision was erroneous for two reasons.  Both are unpersuasive.  First, Plaintiffs argue that Defendants failed to provide the legally required notice

5

of material changes to a plan.  Plaintiffs argue that the 1998 Summary Plan Description (the "1998 SPD"), issued in January 1998, is the only document that is legally sufficient in substance and timeliness, but by the time it was sent to active management employees, Plaintiffs had terminated their employment and were no longer in the recipient group.  Second, Plaintiffs argue in the alternative that, even if the earlier Notice Letters were legally sufficient, the BPC had an insufficient basis to conclude that Plaintiffs received them.  These arguments are incorrect as the substantial evidence supports the conclusion that the April 1997 Notice was legally sufficient and that Plaintiffs received it.

The April 1997 Notice satisfied the notice requirement for material modifications:  "The administrator of an employee benefit plan . . . shall . . .  furnish a summary description of any material modification to the plan . . . in a manner calculated to be understood by the average plan participant not less than 210 days after the close of the plan year in which the modification or change was adopted."  29 C.F.R. § 2520.104b-3.  For example, a newsletter summary of the benefits' modifications, notwithstanding how it is titled, may be sufficient notice.  *See Vaughan v. Metal Lathers Local 46 Pension Fund*, 474 F. Supp. 613, 620 (S.D.N.Y. 1979), *aff'd sub nom. Vaughan v. Metal Lathers' Local 46 Pension Fund*, 626 F.2d 237 (2d Cir. 1980) ("We need not now determine whether Fraser actually received a timely copy of the newsletter.  We agree with defendants that the publication of the new rule in the newsletter was a reasonable method of notifying participants and beneficiaries of the Plan of the February 28, 1977 amendment.").

The April 1997 Notice (including its enclosed Fact Sheet) disclosed the material modifications adopted in the Special Update.  As relevant here, it disclosed that participants on the active payroll as of January 1, 1997, who leave the Company could begin receiving monthly pension payments, discounted for age, if appropriate.  The Fact Sheet explains that the retired

participant's vested pension benefit is immediately payable as an annuity without any reduction for age if the participant is at least age 55.  The Fact Sheet also explicitly states that the participant has two *options* -- to leave the cash balance in the account accruing interest or to *elect to receive payments*.

The April 1997 Notice complied with the other disclosure requirements as well.  It was delivered to Plaintiffs' home addresses and was not merely placed "in a location frequented by participants."  29 C.F.R. § 2520.104b-1(b)(1).  It also was timely sent.  As the Special Update became effective on August 1, 1997, and the April Notice Letter was sent four months earlier in April 1997, it complies with the requirement that the notice be sent "not later than 210 days after the close of the plan year in which the modification or change was adopted."  29 C.F.R. § 2520.104b-3(a); *see Meehan v. Atl. Mut. Ins. Co.,* No. 06 Civ. 3265, 2008 WL 268805, at *11-12 (E.D.N.Y. Jan. 30, 2008) (approving as compliant with the notice regulation a notice sent prior to the adoption date of the plan amendment).

Substantial evidence also supports that Plaintiffs received the April 1997 Notice.  The testimony of two witnesses, Ms. Stoia and Mr. Adam, who testified in the *Helton* trial, establish that the April 1997 Notice was mailed to active management employees, defined as those on the employee roll in 1997.  *Helton*, 805 F. Supp. 2d at 238-39.  In this case, unlike *Helton*, there is no dispute that Grosso and Wing were active management employees in April 1997.  The court in *Helton* accepted the Stoia and Adam testimony (in its Findings of Fact) but concluded that there was no evidence that Ms. Helton had been designated as an active management employee at the time of the mailing, as she was on an unpaid leave of absence from which she did not return before leaving the company.  *Id.*  The BPC reasonably relied on the Stoia and Adam testimony to determine that the April 1997 Notice was sent to active management employees in

1997, which included Plaintiffs in this case.

Plaintiffs contend that the BPC should not have considered the Stoia and Adam testimony pursuant to the Court's December 3, 2018, Order (the "December 3 Order"), which in relevant part denied Defendants' leave to supplement the administrative record with the trial transcripts from the *Helton* trial regarding the sending of notice.  In their first summary judgment briefing, Plaintiffs objected to supplementing the administrative record with the transcripts from the "*Helton* trial regarding the mailing of the 1997 letter . . . . *[O]nly the testimony credited by the district court matters*."  Dkt. 38 n.8 (emphasis added).  Plaintiffs' argument is rejected because the District Court in *Helton* expressly included in its Findings of Fact the testimony of Ms. Stoia and Mr. Adam on which the BPC relied.  *Helton*, 805 F. Supp. 2d at 238-39.  The BPC did not need to rely on any transcripts.

**B.  The Motion for Relief from the Second Opinion Is Denied**

Plaintiffs seek relief, under Rules 54(b) and 60(b), from the Second Opinion based on intervening controlling law, namely the Second Circuit's recent opinion in *Browe*, 15 F.4th 175.  Rule 54(b) and Rule 60(b) respectively govern a party's applications for relief from non-final and final orders.

Plaintiffs argue that the Second Circuit's decision in *Browe* requires that the Second Opinion be vacated.  In *Browe*, the Second Circuit, reviewing the district court's decision de novo, held that the denial of benefits was erroneous.  *Browe*, 15 F.4th at 203.  The court stated the general and well-established principle that "conditions precedent . . . are not favored and must be expressed in plain, unambiguous language."  *Id.* at 204 (ellipsis in the original) (quoting *Georges v. United Nations*, 834 F.3d 88, 94 (2d Cir. 2016)).  On the facts of that case, including the specific language in the Plan Agreement, and the possibility of waiver, the court declined to

read the relevant provision as imposing a condition precedent. *Browe*, 15 F.4th at 204-05. Plaintiffs argue that this is controlling, intervening authority and that it was incorrect as a matter of law to uphold the BPC's interpretation that a written application was required to receive Special Benefits. This argument fails for three reasons.

First, *Browe* is not an "intervening change in controlling law," which would be a basis to challenge the Second Opinion. *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104 (internal quotation marks omitted). The court in *Browe* considered a well-established principle of contract interpretation to interpret the Plan agreement in that case. Plaintiffs could have made this argument when the Court first found the language to be ambiguous and remanded the matter back to the BPC for consideration of extrinsic evidence, or when Plaintiffs challenged the BPC Second Denial based on that extrinsic evidence. The argument is waived because it was not previously raised. *See Tonga Partners, L.P.*, 684 F.3d at 52.

Second, the principle repeated in *Browe* does not foreclose the consideration of extrinsic evidence to interpret an ambiguous contract. *See, e.g.*, *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("We see no error in the district court's determination that the contract documents were ambiguous [as to whether a requirement was a condition precedent]; and, in light of the evidence, we see no clear error in its finding that the parties intended that satisfaction of the Customer Purchase Order requirement be a condition precedent to Greystone's duty to make payments from GBMI's credit account to Diesel."); *Edelman Arts, Inc. v. Art Int'l (UK) Ltd.*, 841 F. Supp. 2d 810, 826 (S.D.N.Y. 2012) (examining extrinsic evidence to determine whether the parties intended to establish a condition precedent). Here, the BPC was directed to consider extrinsic evidence to interpret the Plan because it was found to be ambiguous, *Grosso*, 2019 WL 4805809, at *7-9, and based on substantial evidence,

the BPC concluded that participants must submit written election to the Plan to be entitled to benefits.

Third, the principle of contract interpretation stated in *Browe* does not dictate the result in this case. The standard of review in *Browe* was de novo because the health benefit plan at issue did not grant the plan administrators discretion to make final benefit determinations. *Browe v. CTC Corp.*, 331 F. Supp. 3d 263, 292 (D. Vt. 2018), *vacated in part on other grounds*, 15 F.4th 175 (2d Cir. 2021). There, the Second Circuit was applying a principle of contract interpretation to determine the intent of the parties de novo. In contrast, the standard of review here for reviewing the Plan Administrator's findings concerning the Plan is abuse of discretion. *See Grosso*, 2019 WL 4805809, at *6-7 (discussing the applicable standard of review). The BPC's interpretation was reasonable, supported by substantial evidence and, as discussed above, was not erroneous as a matter of law. *See Grosso*, 2021 WL 2115210, at *7.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' June 8, 2021, and October 6, 2021, motions for reconsideration are DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 79, 87 and 89. Further, as the Opinion and Order at Docket Number 98 has been amended, the Clerk of Court is respectfully directed to strike Docket Number 98. A separate order will issue regarding next steps.

Dated: December 13, 2021
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

10